# United States Bankruptcy Appellate Panel
**FOR THE EIGHTH CIRCUIT**

_____

No. 06-6028WM

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| CP Holdings, Inc., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| California Public Employees' | * | |
| Retirement System, | * | |
| | * | |
| Plaintiff-Appellee, | * | Appeal from the United States |
| | * | Bankruptcy Court for the Western |
| v. | * | District of Missouri |
| | * | |
| Janice Stanton, Trustee, and | * | |
| CP Holdings, Inc., | * | |
| | * | |
| Defendants-Appellants. | * | |

_____

Submitted: August 23, 2006
Filed: September 14, 2006

_____

Before KRESSEL, Chief Judge, SCHERMER and McDONALD, Bankruptcy Judges.

_____

KRESSEL, Chief Judge.

The trustee and CP Holdings, Inc. appeal from a bankruptcy court[1] order determining that California Public Employees' Retirement System held a perfected security interest in the debtor's claim against Kmart. We affirm.

**BACKGROUND**

In 1989, the debtor signed a promissory note for $12 million with Principal Mutual Life Insurance Company. Principal endorsed this note to CALPERS, which became the holder of the note at all times material to this case. The debtor secured the note in part by granting a Mortgage and an Assignment of Lease and Rents on three parcels of real estate located in Maryland, Michigan, and Missouri. The Assignment of Lease and Rents conveyed "all rights of the lessor under all leases affecting the Mortgaged Premises . . . and all the rents, and other payments arising thereunder." The debtor also agreed "not to . . . terminate any of the Leases or accept a surrender thereof without prior written consent of Assignee."

The debtor leased each of the three properties to Kmart. In 2002, Kmart filed a petition under Chapter 11. During its case, Kmart rejected its leases with the debtor pursuant to 11 U.S.C. § 365. Both the debtor and CALPERS filed lease rejection claims in the Kmart bankruptcy case. CALPERS filed its claim relying on the provision in the Assignment of Lease and Rents that stated "Assignor hereby appoints Assignee the true and lawful attorney of Assignor . . . with power for it and in its name, place and stead, to demand, collect, receipt and give complete acquittances for any and all rents and other amounts herein assigned." CALPERS' claim was allowed in the approximate amount of $3.5 million while the trustee's was "expunged".[2]

---

[1] The Honorable Arthur B. Federman, United States Bankruptcy Judge for the Western District of Missouri.

[2] The Bankruptcy Code contains no such concept. We assume this means the claim was disallowed.

On June 13, 2003, the debtor filed its own Chapter 11 petition. The debtor attempted to relet the Kmart properties and successfully leased the Maryland property to Home Depot. The property in Michigan was also relet, but the leases were contingent on confirmation of a Chapter 11 plan. Because the debtor's case was converted to Chapter 7 on April 29, 2005, the leases in Michigan were not approved.

After the debtor's case was converted to Chapter 7, Janice Stanton was appointed trustee. She now argues that she is entitled to the proceeds from the lease rejection claims against Kmart. The trustee claims that because the debtor terminated the Kmart leases, it held only a claim for breach of contract. The trustee concedes that CALPERS' security interest in the properties is broad enough to encompass both the claims for rents and general intangible damages, and that CALPERS therefore has a security interest in the claim in Kmart's case. However, she argues that CALPERS did not properly perfect its security interest on general intangibles, and the trustee can therefore avoid the security interest under 11 U.S.C. § 544.

CALPERS claims that the debtor did not terminate its leases with Kmart, and therefore CALPERS' claim against Kmart was for rents and not contract damages. Because it perfected its interest in rents, CALPERS argues, the damages from the lease rejection claims belong to it and not the trustee.

**Standard of Review**

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Debold v. Case*, 452 F.3d 756, 761 (8th Cir. 2006); *Litzinger v. Litzinger (In re Litzinger)*, 340 B.R. 897, 903 (B.A.P. 8th Cir. 2006).

## DISCUSSION

The trustee's entire argument is dependant on the factual assertion that the leases between the debtor and Kmart were terminated.[3] She argues that once termination of a lease occurs, the tenant's obligation to pay rent is extinguished and the landlord may only bring an action for breach of contract, and then only if the contract specifically allows it. See *Circuit City Stores, Inc. v. Rockville Pike Joint Venture Ltd. P'ship*, 829 A.2d 976, 989-990 (Md. 2003). Without the crucial step of termination, the tenant's obligation to pay rent continues. *See e.g.*, *Winshall v. Ampco Auto Parks, Inc.*, 417 F.Supp. 334, 336 (E.D. Mich. 1976). We agree with the bankruptcy court that the trustee has not demonstrated that the leases were terminated.

### Rejection Under 11 U.S.C. § 365 Does Not Terminate a Lease.

Under 11 U.S.C. § 365(g), a lease rejection functions as a breach of the lease, but not as a termination of the lease. 11 U.S.C. § 365(g); *Block Properties Co., Inc. v. Am. Nat'l Ins. Co.*, 998 S.W.2d 168, 175 (Mo. Ct. App. 1999). The underlying obligations of the lease continue upon the rejection of the lease. *In re Modern Textile, Inc. v. P.M. Holding Corp.*, 900 F.2d 1184, 1191 (8th Cir. 1989).

### The Debtor Did Not Expressly Terminate the Leases.

Termination of a leasehold estate may be accomplished through either express words indicating that the landlord has accepted the surrender of the leasehold, or by actions that give rise to the inference that surrender has occurred. *See Crow v. Kaupp*, 50 S.W.2d 995, 998 (Mo. 1932). The debtor's leases with Kmart provide that, in the event of Kmart's bankruptcy, the debtor could terminate the leases with Kmart if the debtor gave notice of its intention to do so. The Assignment of Lease and Rents

---

[3]CALPERS does not concede that termination is sufficient to deprive it of its perfected security interest, but agrees it is a necessary condition. i.e. CALPERS would argue that even if the leases were terminated, its security interest would be perfected as to the debtor's claim against Kmart. Because we hold that the trustee has not proven that the leases were terminated, we need not address this issue.

required CALPERS to give its consent prior to the debtor's termination of the leases. The debtor neither gave Kmart notice that the debtor was terminating Kmart's leases, nor received CALPERS' permission to terminate the leases. The bankruptcy court's finding that the debtor did not expressly terminate the lease was not clearly erroneous.

### The Debtor Did Not Implicitly Terminate the Leases.

Even if a landlord does not terminate a leasehold through express words, a landlord may still terminate a lease through actions which amount to termination. *See Circuit City*, 829 A.2d at 988; *Winshall v. Ampco Auto Parks, Inc.*, 417 F.Supp. 334, 336 (E.D. Mich. 1976); *Crow,* 50 S.W.2d at 998. There is little indication that the debtor took any actions consistent with lease termination. The trustee provides only an affidavit by Paul Schwabe, the debtor's secretary, as evidence to prove that the debtor terminated the leases.[4] The affidavit contains a conclusory statement that the debtor terminated the leases with Kmart, but does not list any actions that the debtor took in order to effect a lease termination. Nor are the debtor's attempts to relet the properties sufficient to prove termination. Reletting or attempting to relet a leasehold is not necessarily determinative when establishing whether a lease has been terminated. *See Winshall*, 417 F.Supp. at 336. Given the lack of competent, persuasive evidence that the debtor terminated Kmart's leases, we cannot conclude that the bankruptcy court clearly erred in determining that no termination occurred.

### CONCLUSION

Because the trustee failed to show that the debtor terminated Kmart's leases either expressly or implicitly, CALPERS' claim against Kmart is a claim for rents. CALPERS therefore has a perfected, unavoidable security interest in the debtor's claim against Kmart.

---

[4] The affidavit was submitted after the close of evidence and was neither solicited by or authorized by the bankruptcy court. It was within its discretion to ignore it.

5

For the foregoing reasons, the judgment of the bankruptcy court is affirmed.

---